MAYHEW v BERRIEN COUNTY ROAD COMMISSION

Docket No. 67486. Argued January 6, 1982 (Calendar No. 13).—Decided November 23, 1982.

Shirley Mayhew, for herself and as guardian of David W. Mayhew, a minor, brought an action in the Berrien Circuit Court against the Berrien County Road Commission and Lincoln Township, alleging negligence and intentional nuisance in the maintenance of a guardrail which, when struck by an automobile, struck David Mayhew, causing injuries. Settlement was reached with the driver of the automobile before the commencement of the action. The defendants moved for apportionment of damages among the tortfeasors. The trial court, Chester J. Byrns, J., ordered that the jury would be instructed to apportion fault among the defendants and the driver of the automobile and that the court would reduce the amount of any damages assessed by the percentage of the fault of the driver. The plaintiff applied in the Court of Appeals for leave to appeal and applied in the Supreme Court for leave to appeal prior to decision by the Court of Appeals. The Supreme Court granted leave to appeal prior to decision by the Court of Appeals.

In a unanimous opinion by Justice Williams, the Supreme Court *held:*

The liability of joint tortfeasors who do not enter into a settlement prior to trial must be determined by deducting the amount of any settlement between a plaintiff and a settling tortfeasor for the same injury from the total liability of all joint tortfeasors as found by the trier of fact. Liability may not be determined by calculating the proportionate liability of the settling tortfeasor and deducting that amount from the total liability.

1. The Revised Judicature Act was amended to provide for application of comparative fault in determining the pro rata shares of tortfeasors in an entire liability. However, the section of the act which governs the effect of a release upon the liability of remaining tortfeasors was not amended to require

application of the comparative fault doctrine, and requires a reduction of the claim against the remaining tortfeasors by the amount of the settlement.

2. The intent of the Legislature in providing for allocation of liability according to the relative degree of fault of joint tortfeasors must be considered, along with the judicial goal of encouraging settlements. Recognition of both is best achieved by reducing a claim against joint tortfeasors by the amount of any settlement. Were apportionment of liability among all tortfeasors to be permitted following settlement with one of two or more tortfeasors, the settling tortfeasor's liability would be assessed without adequate representation, and the plaintiff would be placed in a position where he would be required to show not only that he was not at fault but also that the settling tortfeasor was only minimally at fault, lest too great a percentage of fault be attributed to the settler with an attendant reduction in the plaintiff's recovery.

Reversed.

1. NEGLIGENCE — JOINT TORTFEASORS — CONTRIBUTION — SETTLE-
   MENT.

   The liability of non-settling joint tortfeasors must be reduced by the amount of any settlement where a settlement is reached with any person liable in tort for the same injury; the liability may not be determined by calculating the proportionate liability of the settling tortfeasor and deducting that amount from the total liability (MCL 600.2925d; MSA 27A.2925[4]).

2. NEGLIGENCE — JOINT TORTFEASORS — CONTRIBUTION — SETTLE-
   MENT.

   The intent of the Legislature in providing for the allocation of liability according to the relative degree of fault of joint tortfeasors must be considered along with the judicial goal of encouraging settlements; recognition of both is best achieved by the reduction of a claim by the amount of settlement rather than by the proportionate amount of liability of the settling tortfeasor (MCL 600.2925b, 600.2925d; MSA 27A.2925[2], 27A.2925[4]).

*Sloan, Benefiel & Farrer* (by *Gary C. Newton*) for plaintiff.

*Butzbaugh, Page, Butzbaugh & Dewane* (by *John E. Dewane* and *Randall L. Juergensen*) for defendant Berrien County Road Commission.

*Early, Starbuck & Lennon* (by *Thomas P. Standal)* for defendant Lincoln Township.

WILLIAMS, J.

### INTRODUCTION

Defendants, by motion, challenged the continuing validity of the contribution-release statute, MCL 600.2925d; MSA 27A.2925(4)[1] in face of "the adoption of the doctrine of pure comparative negligence in Michigan. *Placek v Sterling Heights,* 405 Mich 638 [275 NW2d 511] (1979). MCL 600.2949 [MSA 27A.2949, 1978 PA 495—comparative negligence for products liability]".

The ultimate issue, as posited by both plaintiff and defendants, is, in the words of the former's brief, whether a "verdict rendered against jointly liable defendants is reduced by an amount proportionate to a *settling tortfeasor's percent of negligence* [as the defendants and the circuit judge say the doctrine of pure comparative negligence requires] rather than the *amount of the settlement* [as plaintiff and the contribution-release statute indicates the law requires]". (Emphasis added.)

The defendants argue:

---

[1] "When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 or 2 or more persons liable in tort for the same injury or the same wrongful death:

"(a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.

"(b) It reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.

"(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor."

"The entire concept of comparative negligence is premised on the concept that fault can be allocated. If fault can be allocated as between a plaintiff and defendants, there is absolutely no logical distinction between that and the allocation of fault as between tortfeasors." ·

The defendants also argue:

"With lack of legislative guidelines following the adoption of comparative negligence, in reaching a decision, this court must look to * * * Conkright".[2]

*Conkright v Ballantyne of Omaha, Inc,* 496 F Supp 147, 152 (WD Mich, 1980) stated:

"I believe that Michigan will adopt an approach under which the comparative fault of a defendant dismissed pursuant to a settlement is determined by the finder of fact, and this proportion of fault is employed to reduce plaintiff's recovery against nonsettling defendants." (Footnote omitted.)

To begin with, while we do recognize that there is a reasonable relationship between comparative negligence and comparative contribution based on degree of fault, we likewise find that there is no such absolute incompatibility between the two concepts that they cannot coexist. See *West v Rollhaven Skating Arena,* 105 Mich App 100; 306 NW2d 408 (1981); *Bacon v Dep't of State Highways,* 115 Mich App 382; 320 NW2d 681 (1982). Furthermore, we recognize that the law does not contemplate judicial abrogation of constitutional legislative enactments because not reasonably re-

---

[2] The court in *Conkright,* while accepting the correlation of comparative negligence and comparative fault, expressly limited its decision to products liability cases and did not decide what effect *Placek* had on principles of contribution in other areas of tort law. 496 F Supp 150, fn 3. The products liability field is specifically covered by statute. MCL 600.2945-600.2949; MSA 27A.2945-27A.2949.

lated to a judicial decision. Finally, we find no "lack of legislative guidelines" as to legislative intentions concerning comparative contribution based on fault, both prior and subsequent to Michigan's adoption of comparative negligence. Following these guidelines, we hold that the contribution-release statute, MCL 600.2925d; MSA 27A.2925(4) is still viable. We therefore reverse the judgment of the circuit court.

## I. FACTS

This suit arises out of an automobile accident that occurred on June 10, 1976. Deonna Zech was traveling on Grand Mere Road in North Lake Park, Lincoln Township, Berrien County, when her automobile went out of control and struck a guardrail. David Mayhew, who was standing by the creek fishing, was struck by the guardrail, and he fell into the water. As a result, he suffered severe brain damage and other injuries.

David's mother, Shirley Mayhew, commenced an action against the Berrien County Road Commission and Lincoln Township under negligence and intentional nuisance theories on January 18, 1978. Plaintiff settled with the driver of the automobile before the instant suit was commenced. The amount of the settlement was stated in oral argument to be $50,000, the maximum possible recovery under the driver's insurance policy.

Defendants filed an answer and asserted as an affirmative defense that the negligence of the settling party was a proximate cause of the injury and, thus, their liability should be reduced by the extent of the settling tortfeasor's negligence. On June 13, 1980, defendants filed a motion for appor-

tionment of damages among tortfeasors. The trial judge granted the motion on June 18, 1980, and ordered that "the jury be instructed to apportion fault, by percentage, among all those whose fault is found by the jury to have been a proximate cause of the accident and the injuries sustained by David Mayhew, including not only the parties to this action but also including the fault of Deonna Lynn Zech". The judge further ordered that "the amount of damages, if any, assessed by the jury be reduced by the court by the percentage of fault apportioned to persons other than the defendants and that judgment be entered for the reduced amount". The judge also stated that the judgment would be joint and several if both defendants were found liable, but that there would be a right to contribution.

An application for leave to appeal was filed in the Court of Appeals on September 22, 1980. An application for leave to appeal prior to decision by the Court of Appeals was filed in the Supreme Court on November 3, 1980. Before any action was taken on the applications, plaintiff filed a motion for partial rehearing in light of *Weeks v Feltner,* 99 Mich App 392; 297 NW2d 678 (1980), but the trial court felt that *Weeks* did not alter its original order. The Court of Appeals, however, vacated the circuit court's order of June 18, 1980, and remanded for reconsideration in light of *Weeks.* The circuit court, on May 22, 1981, reiterated its belief that *Weeks* did not govern the situation present in the case at hand.[3] An appeal was taken from the

[3] In *Weeks,* the defendants requested, and were denied, a jury instruction requiring the jury to apportion damages among the various defendants. The Court of Appeals stated that the doctrine of comparative negligence seeks to assure fair and adequate compensation for injured plaintiffs. The Court also stated that while there may be some unfairness in holding the defendants responsible for the fault

circuit court's instruction on comparative negligence, and, on August 20, 1981, we granted leave to appeal prior to a decision by the Court of Appeals. 411 Mich 1035 (1981).

## II. DEFENDANTS' THEORY

Defendants base their argument for comparative fault on the theory that when the State of Michigan adopted the doctrine of comparative negligence, the state, of necessity, adopted the corollary, comparative fault. Furthermore, the defendants argue that comparative fault must apply to all tortfeasors, including settling tortfeasors, which means that plaintiff's total damage recovery must be reduced by the settler's proportionate share of fault rather than the value of the settlement.

In passing, it should be noted that the adoption of comparative negligence in Michigan, judicially by *Placek* in 1979 and legislatively for products liability in 1978, was subsequent to the commencement of this matter on January 18, 1978. The importance of this is that the parties recognize that the current state of the law, rather than the state of the law existing at the time of the accident, controls the conduct of this case.

There is no question but that defendants' argument is not without logic. However, it confronts two stubborn legislative facts. First, as to comparative fault, MCL 600.2925b; MSA 27A.2925(2), at

of their codefendants, this result may occur whether the plaintiff is at fault or not. The court concluded that the doctrine of comparative negligence does not mandate abandonment of joint and several liability. 99 Mich App 395.

The trial court did not find *Weeks* dispositive of the issue presented here, because the issue regarding a settling tortfeasor and the manner in which to reduce the jury verdict was not addressed in *Weeks.*

the time of the accident and also commencement of the action, provided in pertinent part:

"(a) Their relative degrees of fault shall *not* be considered." (Emphasis supplied.)[4]

In other words, the Legislature specifically proscribed comparative fault. Second, MCL 600.2925d; MSA 27A.2925(4), in pertinent part, at that time provided and now provides:

"When a release * * * is given in good faith * * * [i]t reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release * * * or to the extent of the amount of the consideration paid for it, whichever amount is the greater."

In other words, the Legislature provided and now

[4] 1982 PA 147 changed MCL 600.2925b; MSA 27A.2925(2) from "relative degrees of fault *shall not* be considered" to "relative degrees *shall* be considered".

It is helpful in analyzing the contribution statutes to use illustrations of typical situations. The following result would have been reached prior to the amendment of § 2925b:

If A, the injured party, were to sue the alleged tortfeasors B, C, and D and recover a jury verdict of $100,000, the following would occur. If A were found to be 25% negligent, then he would be entitled to a joint and several judgment against B, C, and D for $75,000. In determining each person's pro rata share under the old statute, the total amount was divided by the number of parties. Thus, each would be responsible for $25,000; and if B, C, or D paid more than $25,000, he or she would be entitled to contribution from the other parties for the excess.

Under § 2925b as amended, the relative degrees of fault are considered. Thus, if B were found to be 20% negligent, C, 20% negligent, and D, 35% negligent, each would only be responsible for the amount associated with his percentage of fault. Under the doctrine of comparative fault, then, B would be liable for $20,000, C for $20,000, and D for $35,000. This approach reinforces the idea that each party should be fully responsible for his acts and to the full extent to which they cause injury. Comparative fault abolishes the concept of multiple tortfeasors sharing liability equally regardless of fault.

Under either the former or the latter form of the statute, defendants would be jointly and severally liable for the entire liability of all the defendants, but their liability to each other would be as indicated.

provides that the total share of damage liability of non-settling tortfeasors should be the entire amount of damages minus the value of the settlement rather than minus the proportionate share of fault of the settling tortfeasor.

Confronted with these facts, defendant road commission argued:

"The imposition of this [release] statute, which predates comparative negligence, upon a comparative negligence system is ill-conceived and illogical. In no fashion can MCL 600.2925d; MSA 27A.2925(4) be treated as a 'legislated answer' * * * to the question posed to this Court. An answer cannot logically predate the question."

Both defendants relied on *Conkright v Ballantyne of Omaha, Inc*, 496 F Supp 147, 152 (WD Mich, 1980), which, in the absence of Michigan judicial precedent and alleged absence of legislative guidelines, attempted to predict the way Michigan law was most likely to evolve as follows:

"I believe that Michigan will adopt an approach under which the comparative fault of a defendant dismissed pursuant to a settlement is determined by the finder of fact, and this proportion of fault is employed to reduce plaintiffs' recovery against nonsettling defendants."

The circuit court's disposition of the motion in this case, delivered orally, specifically recognized and quoted the statute prohibiting consideration of degrees of fault, MCL 600.2925b; MSA 27A.2925(2), but did not refer to, or consider, the contribution-release statute, MCL 600.2925d; MSA 27A.2925(4). That court preferred to rely on *Jorae v Clinton*

*Crop Service,* 465 F Supp 952 (ED Mich, 1979), and on *Greenwood v McDonough Power Equipment, Inc,* 437 F Supp 707 (D Kan, 1977),[5] and reached the conclusion that the joint liability of non-settling tortfeasors would be the amount of the verdict reduced by an amount proportionate to a settling tortfeasor's percent of fault.[6]

## III. ANALYSIS

Because of 1982 PA 147, this Court has the

[5] In *Jorae,* the district court held that 1978 PA 495, the products liability statute, was applicable to the case at hand and that "the legislature did intend to apportion damages on the basis of relative fault between defendants as well as between plaintiffs and defendants in products liability actions". 465 F Supp 958. Therefore, the court concluded that in a products liability case each joint tortfeasor should pay damages equal to his relative degree of fault.

The federal court in *Greenwood* was faced with the decision of whether to allow the joinder of the owner and operator of an allegedly defective lawnmower when such joinder would destroy the court's diversity jurisdiction. The court concluded that the joinder should be denied, but that the defendant's amount of liability should be determined in relation to the amount of fault attributed to the non-parties.

[6] The result that would be reached under the trial judge's instructions to the jury and that reached under § 2925d is very different. An example is helpful.

If the jury were to be instructed to apportion liability among all tortfeasors, including the settling tortfeasor, as in this case, the following would occur: The jury would return with a total verdict, for example, $100,000, and the percentage of liability attributed to each tortfeasor: A, the injured plaintiff, 25% negligent, B, the settling tortfeasor, 25% negligent, C and D, defendants, each 25% negligent. If A had settled with B for $10,000, then A would recover $60,000, $50,000 as a joint and several judgment against C and D and the $10,000 settlement reached with B. The $100,000 judgment is reduced by A's contributory negligence and B's degree of fault. Thus, A would receive $60,000 for injuries the jury felt were worth $75,000.

On the other hand, if § 2925d were applied, then the claim against the defendants is reduced by the *amount* of settlement, not by the percentage of fault. Thus, in the above example, A would be entitled to recover a joint and several judgment of $65,000 against C and D plus the $10,000 settlement reached with B, or a total of $75,000. As between C and D, their equitable shares of liability would be determined on the basis of their relative degree of fault, in accordance with § 2925b.

advantage of pertinent legislation subsequent to that available to the circuit court and the parties. Prior to 1982 PA 147, MCL 600.2925b; MSA 27A.2925(2), as above noted, provided:

"(a) Their relative degrees of fault *shall not be considered.*" (Emphasis supplied.)

1982 PA 147 amended subsection (a) above to read:

"(a) Their relative degrees of fault *shall be considered.*" (Emphasis supplied.)

In other words, by 1982 PA 147, the Legislature specifically adopted comparative fault. As a consequence, it is unnecessary for this Court to determine whether or not *Placek* and the comparative negligence for products liability statute, MCL 600.2949; MSA 27A.2949, require a corresponding change to comparative fault in contribution, since the Legislature itself adopted comparative fault in contribution.

But the legislative adoption of comparative fault does not necessarily answer the ultimate question in this matter, namely whether the contribution-release statute, MCL 600.2925d; MSA 27A.2925(4), has been superseded by *Placek* or by legislative action.[7] For convenience, we repeat the pertinent statutory language:

"When a release * * * is given in good faith * * * [i]t reduces the claim against the other tort-feasors to the

[7] The Michigan Court of Appeals has dealt with this issue most recently in *Bacon v Dep't of State Highways*, 115 Mich App 382; 320 NW2d 681 (1982). See, also, *West v Rollhaven Skating Arena*, 105 Mich App 100; 306 NW2d 408 (1981). These cases held, we believe correctly, that the contribution statute which permits a reduction in the verdict by the amount of settlement as opposed to a reduction by percentage of fault was still applicable even after the adoption of comparative negligence.

extent of any amount stipulated by the release * * * or to the extent of the amount of the consideration paid for it, whichever amount is the greater."

As a matter of fact, when the Legislature, by 1982 PA 147, amended § 2925b and did not amend § 2925d of the contribution between joint tortfeasors section of the Revised Judicature Act, the Legislature gave this Court a strong signal that it intended § 2925d to remain viable rather than be superseded by inference by *Placek* or the products liability comparative negligence statute, MCL 600.2949; MSA 27A.2949. We acknowledge that signal and hold § 2925d to be still viable.

From this, we conclude that the circuit court adopted the wrong formula in determining the liability of the defendant joint tortfeasors. That court considered the liability to be the total liability of all the joint tortfeasors *minus the proportionate liability of the settling tortfeasor;* however, § 2925d provides, and this Court holds, that the liability of the defendant non-settling tortfeasors is the total liability of the joint tortfeasors *minus the amount of the settlement of the settling tortfeasor.*

Furthermore, the legislative intention expressed in MCL 600.2925d; MSA 27A.2925(4) is in line with this Court's policy to encourage settlements. While allocation of liability by the tortfeasors' relative degree of fault is an important goal, it must be considered with the important goal of encouraging settlements. Recognition of both goals is best achieved by reducing the claim against the other tortfeasor by the amount of settlement, as provided by § 2925d.

Since California, as Michigan, also adopted comparative negligence judicially, *Li v Yellow Cab Co of California,* 13 Cal 3d 804; 119 Cal Rptr 858; 532

P2d 1226 (1975), it is interesting to review how it has handled the issue of comparative fault among joint tortfeasors. In *American Motorcycle Ass'n v Los Angeles County Superior Court,* 20 Cal 3d 578, 604; 146 Cal Rptr 182; 578 P2d 899 (1978), the court reviewed the issue and concluded that the common-law equitable indemnity doctrine should be modified to permit a right of partial indemnity on a comparative basis. The court stated that the contribution statutes did not prevent it from developing the common-law right of comparative indemnity. As we have already remarked, this Court was not confronted with having to consider the possibility of doing this, because the Michigan Legislature adopted comparative fault during the pendency of this appeal. In *American Motorcycle Ass'n,* it was made clear that joint and several liability was not and need not be abolished because of the adoption of comparative negligence, a matter not contested in the instant case.

With particular relevance to the instant case, the California Supreme Court concluded in obiter dictum, "that a plaintiff's recovery from nonsettling tortfeasors should be diminished only by the *amount* that the plaintiff has actually recovered in a good faith settlement, rather than by an amount measured by the settling tortfeasor's proportionate responsibility for the injury". 20 Cal 3d 604. The court reasoned that this approach would be more likely to preserve the incentive to settle claims than would a reduction based on the percentage of fault attributable to the settling tortfeasor. By our decision we agree that the approach taken in California is the most appropriate one and that the verdict rendered by the jury should only be reduced by the amount of settlement, not by the percentage of fault. This is consistent with the ever-important policies of (1) encouraging settle-

ments and (2) assuring that a plaintiff is fully compensated for injuries sustained.

Furthermore, numerous difficulties would be presented if we were to allow the jury to apportion damages among all tortfeasors, including a settling non-party. It would mean that the settling tortfeasor's liability would be assessed without anyone adequately representing that interest. It would put the plaintiff in a unique trial situation. The plaintiff would not only have to advocate that he was not at fault, he would have to convince the jury that the non-party was only minimally at fault. Otherwise, there might be too great a percentage of fault attributed to the non-party, thus reducing the plaintiff's recovery.

Defendants argue that unless the jury is able to allocate fault among all the parties, collusive dealing between a plaintiff and the settling party will be inevitable. While the opportunity for collusion is always present, the contribution statute, § 2925d, attempts to minimize this problem by requiring a good-faith settlement. There is no reason to believe that this approach will generate any more collusive dealing than may have occurred in the past. We are not persuaded that the judgment should be reduced by the percentage of relative fault as opposed to the amount of settlement.

We hold that § 2925d survives the adoption of comparative negligence by this Court. The judgment of the circuit court is reversed.

FITZGERALD, C.J., and KAVANAGH, LEVIN, COLEMAN, RYAN, and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.